| | |
|---|---|
| 1 | Todd M. Friedman (216752) |
| 2 | Adrian R. Bacon (2803332) |
|   | Law Offices of Todd M. Friedman, P.C. |
| 3 | 21550 Oxnard St., Suite 780 |
|   | Woodland Hills, CA 91367 |
| 4 | Phone: 323-306-4234 |
|   | Fax: 866-633-0228 |
| 5 | tfriedman@toddflaw.com |
|   | abacon@toddflaw.com |
| 6 | **Attorneys for Plaintiff, Judith Givens** |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH GIVENS, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION and SELECT PORTFOLIO SERVICING, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq*.)<br>(2) Violation of Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 *et seq*.)<br>(3) Violation of Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code §§ 1788 *et seq*.)<br><br>**Jury Trial Demanded** |

Plaintiff Judith Givens ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action Complaint against Defendants WELLS FARGO BANK, NATIONAL ASSOCIATION and SELECT PORTFOLIO SERVICING, INC. (hereinafter, jointly, "Defendants") to stop Defendant's practice of falsely advertising that it will provide services that it has no intention to provide and to redress for a nationwide class of consumers ("Class Members") whose mortgage loans were transferred during modification, within the applicable statute of limitations period, by Defendant.

2. Defendant WELLS FARGO BANK, NATIONAL ASSOCIATION (individually, "WFB") is a federally chartered banking institution and is engaged in the business of providing loans and related services with its headquarters and principle place of business in Sioux Falls, South Dakota.

3. Defendant SELECT PORTFOLIO SERVICING, INC. (individually, "SPS") is a corporation of the state of Utah and is engaged in the business of loan servicing with its headquarters and principle place of business in Salt Lake City, Utah.

4. Defendant WFB represents that it will provide certain trial periods involving modified payments on mortgage loans and refinance said mortgage loans at the end of these trial periods.

5. Plaintiff and others similarly situated received these kinds of loans from Defendant WFB and were subsequently informed that their loans had been transferred to Defendant SPS.

6. When Plaintiff and others similarly situated made modified payments to Defendant SPS in reliance on Defendant WFB's representations, they were subsequently informed that their loans were in default.

7.      Defendant WFB misrepresented and falsely advertised to Plaintiff and others similarly situated that they were approved for modified payments and refinancing, when in fact they did not and had no intention to do so.

8.      Defendant SPS misrepresented and falsely advertised to Plaintiff and others similarly situated that it would honor the arrangements offered by Defendant WFB, when in fact they did not and had no intention to do so.

9.      Defendants' misrepresentations to Plaintiff and others similarly situated caused them to receive these loans, which Plaintiff and others similarly situated would not have taken absent these misrepresentations by Defendants and their employees. In so doing, Defendants have violated Federal and California consumer protection statutes.

**NATURE OF THE CASE & COMMON ALLEGATIONS OF FACT**

10.     Consumers take out loans from Defendant WFB, which Defendant advertises as having certain payments.

11.     Consumers rely on the representations and advertisements of loan providers in order to know which loans to purchase.

12.     Consumers further rely on Defendant WFB's representations when it offers them the opportunity to refinance their loans to lower their monthly payments and/or interest rates.

13.     Defendant WFB frequently transfers said loans to servicing companies such as Defendant SPS.

14.     Consumers reasonably expect that any offers of modification or refinancing that they have agreed to with Defendant WFB will be honored by Defendant SPS once their loans are transferred.

15.     Defendants profit from the sale of these loans. Without Defendants' representations, many of the consumers would not have taken out these loans.

16.     The aforementioned representations are objectively false and

constitute an unlawful, unfair, or deceptive business practices under Cal. Bus. & Prof. Code §§ 17200 et. seq.

17. Defendants' violations of the law include, but not limited to, the unlawful business practices involving transfers of mortgage loans, fraudulent and unlawful debt collection practices, and selling deceptive loan modifications to consumers in California.

18. On behalf of the class, Plaintiff seeks an injunction requiring Defendants to cease selling/acquiring loans undergoing modified payment refinancing and an award of damages to the Class Members, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

19. This class action is brought pursuant to Federal Rule of Civil Procedure 23.

20. This matter is properly venued in the United States District Court for the Eastern District of California, in that a substantial portion, if not all, of the events giving rise to Defendant's liability took place in this district.

21. There is original federal subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), by virtue of 28 U.S.C. §1332(d)(2), which explicitly provides for the original jurisdiction of federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

22. In the case at bar, there are at least 100 members in the proposed Class, the total claims of the proposed Class members are in excess of $5,000,000.00 in the aggregate, exclusive of interests and costs, and Plaintiff seeks

to represent a nationwide class of consumers, establishing minimum diversity.

## THE PARTIES

23. Plaintiff Judith Givens is a citizen and resident of the State of California, County of Yolo.

24. Defendant WFB is a federally chartered banking institution and is engaged in the business of providing loans and related services with its headquarters and principle place of business in Sioux Falls, South Dakota.

25. Defendant SPS is a corporation of the state of Utah and is engaged in the business of loan servicing with its headquarters and principle place of business in Salt Lake City, Utah.

26. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or is attributable to, Defendants and/or their employees, agents, and/or third parties acting on its behalf, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all of Defendants' employees, agents, and/or third parties acting on its behalf, were in accordance with, and represent, the official policy of Defendants.

27. Plaintiff is informed and believes, and thereon alleges, that said Defendants are in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all of their employees, agents, and/or third parties acting on their behalf, in proximately causing the damages herein alleged.

28. At all relevant times, Defendants ratified each and every act or omission complained of herein. At all relevant times, Defendants aided and abetted the acts and omissions as alleged herein.

## PLAINTIFF'S FACTS

29. On January 22, 2019, Plaintiff received a letter from Defendant WFB

notifying her that she was approved for long-term mortgage assistance. The letter stated that the option would give Plaintiff the opportunity to become current with her payments without further late fees.

30. The letter further stated that Plaintiff's monthly mortgage payment during the trial period would be $2,033.11, which was significantly lower than she had previously paid.

31. The letter further stated that Plaintiff could accept the offer by simply making payments of $2,033.11 by the dates indicated, which were March 1, 2019; April 1, 2019; and May 1, 2019.

32. On January 30, 2019, Plaintiff received another letter from Defendant WFB informing her that the servicing of her mortgage loan was being transferred to Defendant SPS.

33. Plaintiff upheld her end of the agreement by continuing to make payments through the end of the trial period. Plaintiff further relied on Defendant SPS's representations that the agreement regarding modified payments would be honored by them. Yet, even though the payments were made on time, and in the agreed upon amount, Defendants wrongfully designated Plaintiff's loan as in default for underpayment.

34. Such business practices rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

35. Plaintiff is informed, believes, and thereupon alleges that such representations were part of a common scheme to mislead consumers and incentivize them to purchase Defendants' services.

36. In paying the modified monthly amounts, Plaintiff relied upon Defendants' representations.

37. Plaintiff would not have paid the modified amounts if she knew that the above-referenced statements made by Defendants were false.

38. Had Defendant WFB properly marketed, advertised, and represented the long-term mortgage assistance program, Plaintiff would not have underpaid on her loan, nor would she have defaulted on her loan.

39. Plaintiff paid her money to Defendant SPS because of the representations of Defendants. Defendant SPS benefited from falsely representing that it would honor the arrangement between Plaintiff and Defendant WFB. Plaintiff received nothing for giving her money to Defendant. Defendant benefited on the loss to Plaintiff and provided nothing of benefit to Plaintiff in exchange.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action, on behalf of herself and all others similarly situated, and thus, seeks class certification under Federal Rule of Civil Procedure 23.

41. The class Plaintiff seeks to represent (the "Class") is defined as follows:

> All consumers who, between the applicable statute of limitations and the date of class certification, underpaid or defaulted on their loans due to Defendants' failure to honor agreed-upon modifications of monthly payments.

42. As used herein, the term "Class Members" shall mean and refer to the members of the Class described above.

43. Excluded from the Class are Defendant, its affiliates, employees, agents, and attorneys, and the Court.

44. Plaintiff reserves the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

45. Upon information and belief, the proposed class is composed of thousands of persons. The members of the class are so numerous that joinder of all members would be unfeasible and impractical.

46. No violations alleged in this complaint are contingent on any

individualized interaction of any kind between class members and Defendants.

47. Rather, all claims in this matter arise from the identical, false, affirmative written statements that the services would be provided for Class Members', when in fact, such representations were false.

48. There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

> (a) Whether Defendants engaged in unlawful, unfair, or deceptive business practices in charging higher monthly payments to Plaintiff and other Class Members than they were promised;
>
> (b) Whether Defendants made misrepresentations with respect to the monthly payments charged to consumers;
>
> (c) Whether Defendants profited from the sale of the services;
>
> (d) Whether Defendants violated Cal. Bus. & Prof. Code § 17200, *et seq.*; 15 U.S.C. § 1692 *et seq.*; and Cal. Civ. Code § 1788 *et seq.*
>
> (e) Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;
>
> (f) Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and
>
> (g) The method of calculation and extent of damages for Plaintiff and Class Members.

49. Plaintiff is a member of the class she seeks to represent.

50. The claims of Plaintiff are not only typical of all class members, they are identical.

51. All claims of Plaintiff and the class are based on the exact same legal theories.

52. Plaintiff has no interest antagonistic to, or in conflict with, the class.

53. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiff's damages stem from her payment of modified monthly payments in reliance on Defendants' misrepresentations during the Class Period. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experiences. Plaintiff's claims are typical of all Class Members as demonstrated herein.

54. Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent herself and the class.

55. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION

## Violation of Unfair Business Practices Act

## (Cal. Bus. & Prof. Code §§ 17200 *et seq*.)

56. Plaintiff incorporates by reference each allegation set forth above.

57. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

58. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendants' acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

59. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

60. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendants' decision to place their accounts in default despite existing agreements for modified payments. Thus, Defendants' conduct has caused substantial injury to Plaintiff and the members of the Class.

61. Moreover, Defendants' conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendants convinced Plaintiff and members of the Class that the mortgage assistance was being provided, in order to induce them to spend money. In fact, knowing that the monthly payments were modified for Plaintiff

and other putative class members, Defendants unfairly profited in that Defendants could simply refuse to recognize the mortgage assistance, collect interest from underpayment, and place consumers in default. Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

62. Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided. Defendants failed to take reasonable steps to inform Plaintiff and class members that the modified payments would not be honored. As such, Defendant took advantage of Defendants' position of perceived power in order to deceive Plaintiff and the Class members. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

63. Thus, Defendants' conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

64. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

65. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

66. Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff paid a lower monthly payment under the basic assumption that this was the correct payment amount. Plaintiff's

reliance upon Defendants' deceptive statements was reasonable due to the unequal bargaining power between herself and Defendants. For the same reason, it is likely that Defendants' fraudulent business practices would deceive other members of the public.

67. As explained above, Defendants deceived Plaintiff and other Class Members by misrepresenting the nature of the long-term mortgage assistance services.

68. Thus, Defendants' conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

## UNLAWFUL

69. California Business and Professions Code § 17200, et seq. prohibits "any unlawful…business act or practice."

70. As explained above, Defendants deceived Plaintiff and other Class Members by representing that monthly payments were a certain amount when in fact they were not.

71. Defendants used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to underpay and default on their loans, in violation of California Business and Professions Code § 17500, et seq. Had Defendants not falsely advertised, marketed or misrepresented the service, Plaintiff and Class Members would not have agreed to it. Defendants' conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

72. These representations by Defendants are therefore an "unlawful" business practice or act under Business and Professions Code § 17200 *et seq*.

73. Defendants have thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief. Additionally,

pursuant to Business and Professions Code § 17203, Plaintiff and Class Members seek an order requiring Defendants to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendants to correct their actions.

## SECOND CAUSE OF ACTION

## Violation of Fair Debt Collection Practices Act

**(15 U.S.C. § 1692 *et seq.*)**

74. Plaintiff incorporates by reference each allegation set forth above herein.

75. Defendants' actions as detailed above constitute multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

76. Defendants falsely represented the character, amount, and/or legal status of Plaintiff and Class Members' debts, in violation of 15 U.S.C. § 1692e(2)(A).

77. Defendants used false representations and/or deceptive means to collect or attempt to collect Plaintiff and Class Members' debts, in violation of 15 U.S.C. § 1692e(10).

78. To the extent that Defendants' actions, counted above, violated the FDCPA, those actions were done knowingly and willfully.

## THIRD CAUSE OF ACTION

## Violation of Rosenthal Fair Debt Collection Practices Act

**(Cal. Civ. Code § 1788 *et seq.*)**

79. Plaintiff incorporates by reference each allegation set forth above herein.

80. Pursuant to Cal. Civ. Code § 1788.17: "[n]otwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j,

inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

81.  Thus, by engaging in conduct prohibited by Sections e(2)(A) and e(10) of the FDCPA, Defendant violated the RFDCPA.

82.  To the extent that Defendants' actions, counted above, violated the RFDCPA, those actions were done knowingly and willfully.

83.  As a direct proximate result of Defendants' conduct, Plaintiff and the Class Members have suffered actual damages and other harm, thereby entitling them to seek statutory damages in the amount of $1,000.00 each, actual damages, and reasonably incurred attorney's fees and costs.  Cal. Civ. Code §1788.30.

## MISCELLANEOUS

84.  Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

85.  Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

86.  Plaintiff, on behalf of herself and the Class, requests the following relief:

(a)  An order certifying the Class and appointing Plaintiff as Representative of the Class;

(b)  An order certifying the undersigned counsel as Class Counsel;

(c)  An order requiring WELLS FARGO BANK, NATIONAL ASSOCIATION and SELECT PORTFOLIO SERVICING, INC., at their own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(d)  An order requiring WELLS FARGO BANK, NATIONAL

ASSOCIATION and SELECT PORTFOLIO SERVICING, INC., to engage in corrective advertising regarding the conduct discussed above;

(e) Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class Members from the defaults and underpayments during the relevant class period;

(f) Punitive damages, as allowable, in an amount determined by the Court or jury;

(g) Any and all statutory enhanced damages;

(h) All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(i) Pre- and post-judgment interest; and

(j) All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

Dated:  December 17, 2020      Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, PC

By: /s Todd. M. Friedman
TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff Judith Givens